```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
                                 :
RANDOLF PUNTER,                  :
                                 :
                Plaintiff,       :
                                 :
    - against -                  :   MEMORANDUM AND ORDER
                                 :
                                 :   Civil Action No.
CITY OF NEW YORK, YORK COLLEGE   :   03-CV-3523
                                 :
                Defendant.       :
                                 :
---------------------------------X
```

TRAGER, District Judge:

Plaintiff Randolf Punter ("Punter" or "plaintiff") brings this employment discrimination case against his current employer, the City University of New York, York College ("York College" or "defendant"), alleging that he suffered unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff also brings actions under 42 U.S.C. § 1981, N.Y.C. Admin. Code § 8-101 and other New York state and city statutes, rules and regulations. Defendant requests summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## Background

Punter, a 53-year-old African-American male, began working for defendant in 1982, after receiving a Masters Degree of

Business Administration. See Dep. of Randolf Punter 6:11-7:11 ("Punter Dep."); Def's Ex. I ("Ex. [x]"). For approximately eleven years he worked as a Financial Aid Counselor in the Office of Student Financial Services.[1] See Def's Statement of Material Facts Pursuant to Rule 56.1 ("Def's 56.1 Stmt."). Plaintiff was denied three promotional opportunities, allegedly for racial reasons, including Budget Director in 1993, Director of Finance in 1994, and Assistant Business Manager in 1996. See Compl. ("Compl.") ¶¶ 19-21, 41. In 1999, he moved to a position in the Office of Career Services. See Def's 56.1 Stmt. ¶ 3.

In or about July 2001, plaintiff agreed to serve as temporary Acting Director of Financial Aid while the College searched for a permanent director. See Def's 56.1 Stmt. ¶ 4. In February of 2002, York College Vice President Avis Hendrickson (an African-American) consulted with the York College administration and selected the following members for a Director of Financial Aid selection committee: Ron Thomas (African-American), Arlene Schreiner (Latina), Allan Rumberg (Caucasian), Richard Stuckhardt (Caucasian), Kraig Knibb (African-American),

---

[1] Many of the facts of this case do not appear to be in dispute, and, where appropriate, uncontroverted facts will be taken from the Local Civil Rule 56.1 Statements provided by defendant. Although plaintiff has filed a 56.1 Statement in opposition, it is replete with conclusions and lacking in evidentiary support or specifics. These conclusive statements are not enough to create a genuine issue of material fact. See Bicker Staff v. Vassar Coll., 196 F.3d 435, 451 (2d Cir. 1999); see also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

2

and George Chin (Asian). Id. at ¶¶ 6,7. In August 2002, plaintiff met with Hendrickson to discuss his concerns about the impartiality of the committee members. See Def's 56.1 Stmt. ¶ 10. Plaintiff mentioned political differences and his belief that Schreiner might retaliate against him for having previously signed a complaint letter concerning Schreiner. Id; Aff. of Randolf Punter ("Punter Aff.") ¶ 18. Plaintiff never mentioned racial bias to Hendrickson. See Def's 56.1 Stmt. ¶ 10. Plaintiff enumerated various political differences but has never identified any racial bias on the part of any individual committee member. Id. at ¶ 11.

Plaintiff requested that Vice President Hendrickson waive the search process and summarily appoint him Director of Financial Aid in March of 2002. See Def's 56.1 Stmt. ¶¶ 16, 18. Hendrickson was unfamiliar with plaintiff's work because she had only been appointed six months earlier. Id. at ¶ 14. Hendrickson was unable to make a positive or negative recommendation to the college President, who is the only person authorized to waive a search, and College President Charles Kidd subsequently denied the waiver request. Id. In September 2002 plaintiff again requested waiver of the search process from the new President, Russell Hotzler; the request was again denied. Id. at ¶ 18. Plaintiff's belief is that search waivers are customarily granted. See Compl. ¶ 26. However, Olga Dais,

Executive Director of Compliance Programs, affirms that in the last five years only thirteen waivers were granted of the last 186 non-faculty job openings. See Aff. of Olga Dais ("Dais Aff.") ¶ 5. To rebut this evidence of the rarity of waivers, plaintiff cites to a deposition which does not appear to be in the record, in which Schreiner states she believes many waivers are granted. See Pl's 56.1 Statement of Material Facts ¶ 15.

With no waiver having been granted, nine candidates were interviewed by the committee, including plaintiff. See Def's 56.1 Stmt. ¶ 21. Because of an illness, plaintiff was unable to attend his interview in person, and was interviewed at home via telephone. Id. at ¶ 22. The committee members asked all candidates, including plaintiff, the same questions. Id. at ¶ 23. The committee members found plaintiff's answers to be vague, insufficiently responsive, and overall unimpressive. Id. at ¶ 24. One committee member explained that plaintiff "seemed to take for granted that his incumbency entitled him to the job." See Aff. of Richard Stuckhardt (Stuckhardt Aff.) ¶ 8. For example, when asked about pending legislation affecting financial aid, plaintiff responded he had people in the office whose job it was to know such things. See Aff. of Arlene Schreiner ("Schreiner Aff.") ¶ 16.

Of the nine interviewed candidates the committee initially recommended three: Cathy Pen ("Pen"), Mildred Santiago-O'Keefe

("Santiago-O'Keefe"), and Hector Santos ("Santos"). See Def's 56.1 Stmt. ¶ 25. Plaintiff alleges in his complaint all three were Caucasian. See Compl. at ¶ 32. However, two committee members, Dais and the committee report all affirm that Santiago-O'Keefe and Santos are both of Hispanic descent. See Aff. of Ron Thomas, ¶ 16; Schreiner Aff., ¶ 18; Dais Aff. ¶ 20; Ex. T. Pen (Caucasian) received the strongest recommendation from all committee members. See Def's 56.1 Stmt. at ¶ 26. Plaintiff, on the other hand, did not rank highly on any of the committee members' interview score sheets. See Ex. O. Pen holds a Bachelor's Degree of Science and has worked in financial aid for twelve years, including serving since October 1999 as an assistant director of financial aid at Hunter College, a school that is considerably larger than York College. See Ex. D.

Dais, concerned that the committee had not recommended any "internal" candidates, asked the committee to recommend three applicants from within York College. See Def's 56.1 Stmt. ¶¶ 28, 30. The committee added Valentina Morgan and Beverly Brown (both African-American), but refused to add plaintiff. Id. at ¶¶ 29,31, Punter Aff. ¶25; Ex. S. Hendrickson interviewed the finalists and recommended Pen to Interim President Hotzler, who approved the appointment. Id. at ¶¶ 32,34. Plaintiff returned to his previous position at the Office of Career Services and received a reduction in pay. See Compl. ¶ 35.

Plaintiff claims that Schreiner, a search committee member, unlawfully retaliated against him. On August 2, 2001, plaintiff had signed a letter sent to Dais, director of compliance programs, expressing concern over Schreiner's internal promotion of a white secretary, Irene Tainey. See Ex. V. The letter was sent approximately fourteen months before plaintiff's October 28, 2002 interview. See Exs. L-M. Plaintiff neither communicated the complaint to Schreiner, nor knows of anyone who did. See Def's 56.1 Stmt. ¶ 37. Plaintiff simply asserts that the letter was common knowledge. See Punter Aff. ¶ 28. However, Dais, who has a friendly relationship with Schreiner, affirms she never informed Schreiner of plaintiff's letter. See Dais Aff. ¶ 31. Schreiner, who knew some people were not pleased with Tainey's promotion, affirms that she first heard about plaintiff's complaint letter after the commencement of this lawsuit. See Schreiner Aff. ¶¶ 5,10.

**Discussion**

Summary judgment is appropriate when there is no "genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is inappropriate where (1) the evidence presents a factual dispute that a reasonable jury could decide in favor of nonmoving party, and (2) the fact in dispute will have a material affect on the outcome of the case. See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences must be drawn from the underlying facts in a "light most favorable to the party opposing the motion." See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The party opposing summary judgment must put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Bare allegations of discrimination "devoid of specifics, but replete with conclusions" are not enough. See Bicker Staff, 196 F.3d at 451; see also Meiri v. Dacon, 759 F.2d at 998.

**(1)**

**Racial Discrimination**

Plaintiff has established a prima facie case of racial discrimination. He has shown that (1) he belongs to a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action , and (4) the action occurred under circumstances giving rise to an inference of discrimination. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000). Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973), once plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate reason for the employment decision. Defendant's articulated reasons for denying plaintiff

the position are plaintiff's poor interview performance, and Pen's qualifications and superior interview performance. See Def's 56.1 Stmt. ¶¶ 24,26. Because a legitimate reason has been presented the presumption of discrimination disappears and the burden shifts back to plaintiff to show the proffered reason is a pretext for unlawful discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Plaintiff relies upon the evidence establishing his prima facie case to establish a genuine issue of material fact regarding the credibility of defendant's proffered reasons. See Pl's Answer to Mot. for Summ. J. ¶ 9. Plaintiff cites to a sex discrimination case which states "there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 n.10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). However, superior paper job qualifications are all plaintiff offers to establish racial discrimination. His "superior qualifications" are that (1) he holds an M.B.A while Pen holds a B.S., (2) he has worked in financial aid for twenty years compared to Pen's twelve, and (3) he was, in effect, the incumbent. See Ex. I. Plaintiff argues that the disparity in paper qualifications between himself and Pen, alone, is

sufficient evidence to find defendant's explanations to be pretext.

Plaintiff's argument is not persuasive. For plaintiff to succeed, a jury would have to conclude that York College's explanation for its hiring decision is not only pretext, but that the pretext serves to mask racial discrimination, and not, for example, political differences. Although plaintiff has enumerated various inter-college political differences with some committee members, he has not described them in detail nor shown them to be motivated by his race. <u>See</u> Ex. W (wherein plaintiff describes Dr. Schreiner as having a "[s]trong dislike for Deans Al Frazier and Earl Duval as well as President Kidd who appointed both to their current positions. Believe that she should have been appointed a Dean. My association with Dean Frazier, and my appointment to Acting Director by the former President, makes me 'guilty by association.'"); <u>see also</u> Ex. X (noting "Committee Chairperson (Dean) Thomas' bias toward Punter in statement to Rev. Norris, '... people in his office have problems with him.'"). Plaintiff's speculation about the motivations of committee members does not amount to evidence of racial animus.

The Second Circuit has held that for a plaintiff to succeed with this argument, a "plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial

9

judgment, could have chosen the candidate selected over the plaintiff.'" Byrnie v. Town of Cromwell Board of Education, 243 F.3d 93, 103 (2d Cir. 2001), (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)). In Byrnie, plaintiff, who sought to become a part-time high school art teacher, established his superior paper qualifications by having a bachelor's and master's degree in Art Education and twenty-one years' experience teaching at the high school level, whereas the job recipient held a bachelor's degree in Fine Art and had been teaching at the middle school level for four years and had eight years of part-time experience. Byrnie, 243 F.3d at 103. The defendant in Byrnie proffered a legitimate reason that plaintiff had performed poorly during the interview process and that the job recipient had performed very well. The Second Circuit held that the superior credentials, on their own, did not meet the "weighty burden" of establishing a material issue of fact. Id. at 103. Similarly, here, Pen is qualified for the job, defendant has proffered a legitimate reason for denying the job to plaintiff, and plaintiff's evidence of discrimination is based upon a disparity in paper qualifications. However, both candidates had over a decade experience and plaintiff's incumbency status seems to have worked against him. The committee was disappointed by plaintiff's vague answers to questions they expected an acting director to know and his

attitude of entitlement to the job in the absence of any clear vision for the future of the Financial Aid Office.[2]  See Schreiner Aff. ¶ 16; Stuckhardt Aff. ¶ 7.  The committee clearly felt plaintiff's inferior interview performance discounted the difference between plaintiff and Pen's paper qualifications. "Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999).  While an MBA is certainly a higher qualification than a bachelor's degree, and twenty years' experience longer than twelve, the difference in paper qualifications between plaintiff and Pen, by itself, does not satisfy the standard that no reasonable person could have chosen the candidate selected over the plaintiff.  Byrnie, 243 F.3d at 103.

In addition, plaintiff has not identified, let alone offered evidence of, racial bias amongst the committee members. Even accepting plaintiff's theory that Schreiner was retaliating,

---

[2] For example, one of the questions asked of all candidates was: "Over the past decade the cost of a college education has risen faster than the cost of living.  In response to this rapid increase in tuition, colleges and universities have begun to take efficiency measures to slow further tuition increases.  From your knowledge of the financial aid process, were in the process are there likely to be found cost saving efficiencies."  Ms. Schreiner described plaintiff's response to this question as so lacking in substance that she graded it a 1 on a scale of 1-5 and noted "didn't get it" on her scoresheet.  See Schreiner Aff. ¶ 16.

plaintiff has given no racially motivated reason to doubt the impartiality of the other four committee members – two of whom were African American – who also ranked plaintiff very low. "A jury cannot infer discrimination from thin air." Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (holding that an allegation of "testy" treatment of Asian and African-American patrons was insufficient to make out a case of disparate racial treatment in a crowded restaurant) (citing Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998)). It is not sufficient to cite a "mistreatment" and ask the court to conclude that it must have been related to one's race. Lizardo, 270 F.3d at 104. Plaintiff presents no direct evidence of racial animus, and much of the circumstantial evidence suggests otherwise. As noted, the makeup of the committee that ranked plaintiff low was comprised of four minorities including two African-Americans. Moreover, four of the five finalists were minorities, including two African-Americans. And the final hiring decision, for all practical purposes, was made by an African-American, Hendrickson. Plaintiff's superior paper qualifications and broad allegations of discrimination have not raised a genuine issue of black-on-black discrimination or an elaborate scheme of racial discrimination within a college whose staff is over fifty percent African-American. See Bryant v. Begin Manage Program, 281 F. Supp. 2d 561, 570 (E.D.N.Y. 2003) (holding that defendant's

12

statements that plaintiff was a "wannabe" and should dress more "Afrocentric" was sufficient evidence establishing black-on-black discrimination to defeat summary judgment); see also www.york.cuny.edu/institutional_research/ fact_book.shtml.  While Pen's inferior paper credentials may have probative value in the credibility of defendants' explanations, they alone do not establish a basis upon which a reasonable jury could conclude defendants explanations are pretext.

**(2)**

**Retaliation**

Plaintiff seems to allege that Olga Dais retaliated against him by failing to remove Schreiner from the committee, which itself is not an adverse employment action because it is not a "materially adverse change."  See Sanders v. New York City Human Resources Administration, 361 F.3d 749, 755 (2d Cir. 2004) (defining "materially adverse" as "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities"); Punter Aff., ¶ 23. Plaintiff also seems to claim Hendrickson and a Dean Urquhart[3]

---

[3] Plaintiff mentions Dean Urquhart for the first time in his affidavit, without explaining her role.  Punter Aff. ¶ 17. Plaintiff's theory regarding Dean Urquhart's involvement in the decision to waive the search process is unclear, and plaintiff gives no reason why Dean Urquhart would want to retaliate against plaintiff.

retaliated by failing to grant his request to waive the search process. Punter Aff. ¶¶ 17, 18, 23. However, plaintiff doesn't dispute that only thirteen of the last 186 jobs searches were waived and that the decision could only be made by then President Kidd, who denied the request. In regard to these claims, plaintiff has failed to demonstrate an adverse employment action on the part of Dais, Hendrickson, or Dean Urquhart.

Plaintiff's only clearly articulated claim of retaliation is against committee member Schreiner. Plaintiff alleges that Schreiner failed to recommend him for the job in retaliation for a letter he had signed complaining about what he believed was her unlawful promotion of a white secretary. See Ex. V. A prima facie case of retaliation is established when (1) plaintiff participates in a protected activity, (2) defendant knows of the activity, (3) an adverse employment action occurs and (4) a causal connection exists between the protected activity and the adverse employment action. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998).

An activity is protected if plaintiff acts under a good faith belief that a violation of Title VII has occurred. See Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990). Plaintiff's belief that committee member Schreiner unlawfully promoted a white secretary makes his signing of a letter sent to Dais, the director of compliance programs, a

14

protected activity.  See Ex. V.

However, plaintiff has failed to establish a triable issue of fact as to whether Schreiner knew of the letter. Dais affirms she never told Schreiner about the letter, and Schreiner affirms she only learned of the letter after the commencement of this lawsuit.  Dais Aff., ¶ 31, Schreiner Aff. ¶ 10.  Plaintiff affirms he neither discussed the matter with Schreiner, nor knows of anyone who did.  Punter Dep. 78:2-80:6.  Plaintiff relies on his notion that the letter was common knowledge.  See Punter Aff. ¶ 28.  Plaintiff's contention is not enough.  Goldhirsh Group, Inc. v. Alpert 107 F.3d 105, 109 (2d Cir. 1997)("If all of the witnesses deny that an event essential to the plaintiff's case occurred, the plaintiff cannot get to the jury simply because the jury might disbelieve these denials.  There must be some affirmative evidence that the event occurred.") (quoting 9A Wright & Miller, Federal Practice and Procedure Civil 2d § 2527, at 288).  In Goldhirsh, plaintiff's speculation as to the content of certain phone conversations in the face of denials by those involved in the conversations was not enough to pass summary judgment.  Similarly, in the face of sworn denials, plaintiff can only speculate, through his unsupported belief the letter was "common knowledge," that Schreiner knew of his signing of a complaint letter.  Punter Aff. ¶ 28.  Without some evidence as to why this particular piece of alleged common knowledge would have

been brought to Schreiner's attention, or that it was on Schriener's mind fourteen months later, plaintiff's contentions do not amount to enough evidence to establish a triable issue of material fact.

Moreover, even if Schreiner's knowledge of the letter could be viewed as a triable issue of fact, plaintiff has failed to establish a causal connection between the protected activity and his denial of the job.  Since direct proof is often difficult to obtain, a plaintiff may establish a causal connection by showing the adverse treatment occurred within close temporal proximity of the protected activity.  See Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir. 1986).  The letter is dated August 2, 2001, and Schriener's involvement in the hiring process involving plaintiff began approximately around the date of his interview on October 28, 2002.  This is a fourteen month gap. Plaintiff has attempted to shorten the gap to seven months after the letter, which is when President Kidd denied his waiver of the search process.  This argument is specious, however, because nothing evidences Schriener was involved in the denial of the waiver or that President Kidd knew of the letter.

The Second Circuit has, on one occasion, found a causal connection where there was a gap as long as almost one year between the protected activity and the retaliatory action.  See DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d

Cir. 1987). However, the <u>DeCintio</u> court also found other, independent evidence establishing causation, namely, direct evidence of retaliatory animus on the part of the employer hospital. <u>Id.</u> No evidence of the sort exists in this case. In fact, the Second Circuit has previously held that a three month time gap, without other probative evidence of a causal nexus, is not sufficient to establish a triable issue of fact. See <u>Hollander v. Amer. Cyanamid Co.</u>, 895 F.2d 80, 86 (2d Cir. 1990). Plaintiff has not pointed to any decision where a fourteen-month gap between protected activity and adverse action was sufficient on its own to establish a causal nexus. In fact, this court has previously held that "there is every indication that [a one] year gap, taken alone, would never [be] sufficient to show a causal connection." <u>Bengard v. United Parcel Service</u>, No. CIV. A. 99-8454, 2001 WL 1328551, at *8 (E.D.N.Y. Aug. 22, 2001).

Plaintiff attempts to establish a causal connection through evidence of disparate treatment of fellow employees who engaged in similar conduct. See <u>Sumner</u>, 899 F.2d at 209 (2d Cir. 1990). <u>Sumner</u> involved evidence that other postal employees had committed more serious acts of insubordination, and that plaintiff, who had filed EEOC complaints, was punished much more severely for a more minor act of insubordination. In the case at a bar, plaintiff points to employees who claim retaliation for filing their own complaints with the State Division of Human

17

Rights. This is a different activity than plaintiff signing a letter to an internal compliance officer, Dias, concerning the promotion of third party. Also, if plaintiff's retaliatory theory is correct, the evidence would suggest that the fellow employees received the same retaliatory treatment as plaintiff, not disparate treatment. If anything, plaintiff is attempting to evidence a pattern of retaliation. This evidence, even if true, has no bearing on the causal connection between plaintiff's letter and later denial of the job.

Therefore, for the above reasons, plaintiff has failed to establish a prima facie case of retaliation.

(3)

**Other Claims**

Defendant has demonstrated that all claims not related to the February 2003 hiring decision are time-barred. Plaintiff does not dispute this point, and those claims are therefore conceded. Defendant also points out that the Eleventh Amendment bars state law and 42 U.S.C. § 1981 claims against non-consenting state agencies, such as York College, from being enforced in federal court. Plaintiff does not dispute this point either, and all state claims are therefore conceded. Regardless of their concession, these claims fail on summary judgment for the same reasons the Title VII claims fail.

## Conclusion

On the two surviving Title VII claims, racial discrimination and retaliation based upon the February 2003 hiring decision, plaintiff has failed to put forth sufficient evidence to establish a triable issue of material fact. Therefore defendant's motion for summary judgment is granted, and plaintiff's claims are dismissed with prejudice. The Clerk of the Court is directed to close the case.

Dated:  Brooklyn, New York
        August 30, 2005

                                SO ORDERED:


                                _____/s/_____
                                David G. Trager
                                United States District Judge